**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337195)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DAVIT NERSISYAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MAV BEAUTY BRANDS, INC., MARC ANTHONY COSMETICS, INC. and RENPURE, LLC

Defendants.

Case No.: 2:23-cv-09035
Date Filed: October 26, 2023

**CLASS ACTION COMPLAINT**

1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)
2. Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)
3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)
4. Breach of Warranty
5. Unjust Enrichment

**JURY TRIAL DEMANDED**

# **TABLE OF CONTENTS**

**Page No.**

I.  INTRODUCTION ............................................................................... 1

II. JURISDICTION ................................................................................. 8

III. VENUE ............................................................................................ 8

IV. PARTIES .......................................................................................... 8

    A.  Plaintiff.......................................................................................... 8

    B.  Defendants................................................................................... 10

V.  FACTUAL ALLEGATIONS ........................................................... 12

    A.  Market and Regulatory Background ......................................... 12

    B.  Defendants' Marketing Strategy ............................................... 13

    C.  Falsity of the Challenged Representations.............................. 20

    D.  Plaintiff and Reasonable Consumers Were Misled by the Challenged
        Representations into Buying the Products, to Their Detriment ............ 28

    E.  The Products are Substantially Similar................................... 35

    F.  No Adequate Remedy at Law .................................................. 36

VI. CLASS ACTION ALLEGATIONS ................................................. 38

VII. CAUSES OF ACTION..................................................................... 41

    COUNT ONE .................................................................................... 41

        "Unfair" Prong ......................................................................... 44

        "Fraudulent" Prong .................................................................. 46

        "Unlawful" Prong..................................................................... 48

    COUNT TWO ................................................................................... 49

    COUNT THREE ............................................................................... 52

    COUNT FOUR ................................................................................. 55

    COUNT FIVE.................................................................................... 57

VIII. PRAYER FOR RELIEF ................................................................. 59

DEMAND FOR JURY TRIAL............................................................... 61

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## COMPLAINT

1.      Plaintiff Davit Nersisyan ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), brings this class action complaint against Defendants MAV Beauty Brands, Inc., Marc Anthony Cosmetics, Inc., and Renpure, LLC (collectively, "**Defendants**"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

2.      **Synopsis.** In an effort to increase profits and to gain an unfair advantage over their lawfully acting competitors, Defendants falsely and misleadingly labels and packages certain of its Renpure brand hair care products with the following claims: "**Plant-Based**," "**plant based**," and/or "**PLANT BASED**" (hereinafter, "**Plant-Based Representations**" and/or "**Challenged Representations**"). The Plant-Based Representations mislead reasonable consumers, including Plaintiff, to incorrectly believe that the Products are only composed of natural plants and water ingredients, which, by definition, are not artificial or synthetic. Defendants reinforce the Challenged Representations on the Products' labels and packaging by repeating them, using green font or colors associated with plants, and displaying them alongside recognizable plant imagery, such as flowers and leaves. Fair and accurate depictions of examples of the Products' front-facing labels or packaging, from each of the four product lines (*Conditioners, Leave-in Products, Scalp Products,* and *Shampoos*), are depicted on the following pages with the Challenged Representations circled in red.

///
///
///
///
///
///

(1) Renpure *Plant-Based Conditioners* – Refresh and Rebalance (Tea Tree & Rosemary) (*see also* **Exhibit 1-1 to 1-17**):



(2) Renpure *Plant-Based Leave-In Products* – Leave-In Conditioner – Hydrate & Replenish – Coconut & Vitamin E (*see also* **Exhibit 1-18 to 1-21**):



CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(3) Renpure *Plant-Based Scalp Products* – Scrub – Clarify & Shine – Apple Cider Vinegar (*see also* **Exhibit 1-22 to 1-26**):



(4) Renpure *Plant-Based Shampoos* Moisturize & Replenish – Coconut & Vitamin E (*see also* **Exhibit 1-27 to 1-43**):



-3-

CLASS ACTION COMPLAINT

3.     **The Deception of the Challenged Representations.** The Challenged Representations have misled reasonable consumers, including Plaintiff, into believing the Products only contain natural plant or water ingredients, to the exclusion of artificial or synthetic ingredients. However, contrary to the labeling, the Products contain numerous ingredients that **do not come from plants or water whatsoever**, and, instead, are artificial (i.e., do not exist in nature or naturally occur) and/or synthetic (i.e., chemically synthesized). Through falsely, misleadingly, and deceptively labeling and advertising the Products, Defendants sought to take advantage of consumers' desire, perceived value, and willingness to pay more for plant-based products as consumers view such products to be natural and therefore healthier, safer, and more environmentally conservative than non-natural, non-plant-based products. In this way, Defendants have charged consumers a premium for non-plant-based products falsely advertised and warranted as "plant-based," while cutting costs and reaping the financial benefits of utilizing cheaper- and easier-to-procure ingredients that either do not come from plants or were artificially created, synthesized, or subjected to substantial processing. Defendants have done so at the expense of unwitting consumers, as well as Defendants' lawfully acting competitors, over whom Defendants maintains an unfair competitive advantage. Accordingly, Defendants' Plant-Based Representations are misleading and deceptive, and therefore unlawful.

4.     **Products.**  The Products at issue are Renpure® brand hair care products sold to consumers in the United States that contain the Challenged Representations on their front labels and/or packaging, regardless of their size or variations (collectively referred to herein and throughout this complaint as the "**Products**"), which include, but are not necessarily limited to, the following product lines, products, and sizes or variations:

a. (1) Renpure *Plant-Based Conditioners*, in all variations, scents, and sizes, including, but not limited to:

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1. Clarify & Shine – Apple Cider Vinegar (*see* **Exhibit 1-1**);

2. Clarify & Shine – Apple Cider Vinegar & Aloe (*see* **Exhibit 1-2**);

3. Hydrate & Replenish – Coconut & Vitamin E (*see* **Exhibit 1-3**);

4. Hydrating Volume – Bamboo & Coconut Water (*see* **Exhibit 1-4**);

5. Moisturize & Replenish – Coconut & Vitamin E (*see* **Exhibit 1-5**);

6. Radiant Shine – Pink Grapefruit Peony (*see* **Exhibit 1-6**);

7. Radiant Shine – Pink Grapefruit & Peony (*see* **Exhibit 1-7**);

8. Refresh & Rebalance – Tea Tree & Rosemary (*see* **Exhibit 1-8**);

9. Refreshing Moisture – Biotin & Collagen (*see* **Exhibit 1-9**);

10. Refreshing Moisture – Tea Tree & Lemon Sage (*see* **Exhibit 1-10**);

11. Restorative – Keratin & Argan (*see* **Exhibit 1-11**);

12. Soften & Hydrate – Rose Water (*see* **Exhibit 1-12**);

13. Thicken & Strengthen – Biotin & Collagen (*see* **Exhibit 1-13**);

14. Thickening Volume – Biotin & Collagen (*see* **Exhibit 1-14**);

15. Ultra Smoothing – Marula Oil & Aloe (*see* **Exhibit 1-15**);

16. Volume & Body – Bamboo Coconut Water (*see* **Exhibit 1-16**);

17. Weightless Hydration – Rose Water (*see* **Exhibit 1-17**);

(*see* **Exhibit 1-1 to 1-17** [Product Images for Renpure *Plant-Based Conditioners*])

b. (2) Renpure *Plant-Based Leave-In Products*, in all variations, scents, and sizes including, but not limited to:

18. Conditioner: Hydrate & Replenish – Coconut & Vitamin E (*see* **Exhibit 1-18**);

19. Conditioner: Moisturize and Replenish Conditioner – Coconut & Vitamin E (*see* **Exhibit 1-19**);

-5-

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

20.  Spray: Thickening – Biotin & Collagen (*see* **Exhibit 1-20**);

21.  Treatment Spray: 5 in 1 – Tea Tree Lemon Sage (*see* **Exhibit 1-21**;

(*see* **Exhibit 1-17 to 1-21** [Product Images for Renpure *Plant-Based Leave-In Products*])

    c.  (3) Renpure *Plant-Based Scalp Products*, in all variations, scents, and sizes, including, but not limited to:

22.  Scrub: Clarify & Shine – Apple Cider Vinegar (*see* **Exhibit 1-22**);

23.  Scrub: Refreshing Moisture – Tea Tree Lemon Sage (*see* **Exhibit 1-23**);

24.  Serum: Clarify & Shine – Apple Cider Vinegar (*see* **Exhibit 1-24**);

25.  Serum: Clarify and Shine – Apple Cider Vinegar (*see* **Exhibit 1-25**);

26.  Serum: Refreshing Moisture – Tea Tree Lemon Sage (*see* **Exhibit 1-26**);

(*see* **Exhibit 1-21 to 1-26** [Product Images for Renpure *Plant-Based Scalp Products*])

    d.  (4) Renpure *Plant-Based Shampoos*, in all variations, scents, and sizes, including, but not limited to:

27.  Clarify & Shine – Apple Cider Vinegar (*see* **Exhibit 1-27**);

28.  Clarify & Shine – Apple Cider Vinegar & Aloe (*see* **Exhibit 1-28**);

29.  Hydrate & Replenish – Coconut & Vitamin E (*see* **Exhibit 1-29**);

30.  Hydrating Volume – Bamboo & Coconut Water (*see* **Exhibit 1-30**);

31.  Moisturize & Replenish – Coconut & Vitamin E (*see* **Exhibit 1-31**);

32.  Radiant Shine – Pink Grapefruit Peony (*see* **Exhibit 1-32**);

33.  Radiant Shine – Pink Grapefruit & Peony (*see* **Exhibit 1-33**);

34.  Refresh & Rebalance – Tea Tree & Rosemary (*see* **Exhibit 1-34**);

35.  Refreshing Moisture – Biotin & Collagen (*see* **Exhibit 1-35**);

36.  Refreshing Moisture – Tea Tree Lemon Sage (*see* **Exhibit 1-36**);

37.  Restorative – Keratin & Argan (*see* **Exhibit 1-37**);

38.  Soften & Hydrate – Rose Water (*see* **Exhibit 1-38**);

39.  Thicken & Strengthen – Biotin & Collagen (*see* **Exhibit 1-39**);

40.  Thickening Volume – Biotin & Collagen (*see* **Exhibit 1-40**);

41.  Ultra Smoothing – Marula Oil & Aloe (*see* **Exhibit 1-41**);

42.  Volume & Body – Bamboo Coconut Water (*see* **Exhibit 1-42**);

43.  Weightless Hydration – Rose Water (*see* **Exhibit 1-43**);

(*see* **Exhibit 1-27 to Exhibit 1-43** [Product Images for Renpure *Plant-Based Shampoos*]).

5.  **Primary Dual Objectives.**  Plaintiff brings this action, individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*), for dual primary objectives: ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for Products that should, but fail to, comport with the Challenged Representations (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. ***Two***, Plaintiff seeks, on an individual basis and on behalf of the Class/Subclass, injunctive relief to stop Defendants' unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representations, by requiring Defendants to change its business

practices, which may include one or more of the following: removal or modification of the Challenged Representations from the Products' labels and/or packaging, removal or modification of the Challenged Representations from the Products' advertising, modification of the Product's formulation be it a change in ingredients or their sourcing and manufacturing processes, and/or discontinuance of the Product's manufacture, marketing, and/or sale.

## II.  JURISDICTION

6.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.  VENUE

7.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff purchased the Products in this District, and Defendants have deliberately marketed, advertised, and sold the Products within this District.

## IV.  PARTIES

### A.  Plaintiff

8.    **Plaintiff Davit Nerisyan.** The following is alleged based upon Plaintiff Davit Nerisyan's personal knowledge:

a. **Residence.** Plaintiff Nerisyan is a resident of Los Angeles, California.

b. **Purchase Details.** Plaintiff Nerisyan purchased the Renpure *Plant-Based Shampoo* – Refresh & Rebalance – Tea Tree & Rosemary (the "**Nerisyan Purchased Product**") at a Target store in or around Los Angeles, California, in or around 2023, for approximately $8.99 (*see* **Exhibit 1-34** [Product Image]).

c. **Reliance on Challenged Representations & Perception.** In making the purchase, Plaintiff Nerisyan read the Challenged Representations on the Product's front labels or packaging, leading Plaintiff to believe that the Product was "plant-based"—i.e., the Product was composed of only natural plant and water ingredients, which are neither artificial nor synthetic.

-8-
CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

d. **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff Nerisyan did not know that the Challenged Representations were false in that Plaintiff did not know that the Product was not actually plant-based—i.e., Plaintiff did not know that the Product was not composed entirely of natural plant and water ingredients, but instead included ingredients that did not come from plants or water and, instead, were artificial and/or synthetic.

e. **No Notice of Contradictions.** Plaintiff Nerisyan did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's labels or packaging that contradicted the prominent Challenged Representations or otherwise suggested that the Products were not, in fact, plant-based and therefore contained non-plant, non-water, artificial, and/or synthetic ingredients.

f. **Causation/Damages.** Plaintiff Nerisyan would not have purchased the Product, or would not have paid as much for the Product, had Plaintiff known that it was not plant-based—i.e., that the Product was not composed entirely of plant and water ingredients, but instead contained ingredients that were artificial and/or synthetic.

g. **Desire to Repurchase.** Plaintiff Nerisyan continues to see the Products available for purchase and desires to purchase them again if the Challenged Representations were in fact true.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Nerisyan does not personally know what ingredients are actually contained in the Products or the methods used to make the Products (including sourcing and manufacturing processes), and Plaintiff does not possess any specialized knowledge in chemistry or general familiarity with the Products' ingredients or the methods typically used to obtain or make such ingredients (including sourcing and manufacturing processes), such that Plaintiff does not personally know and cannot determine whether the Products' ingredients: (a) come from plants and water or some other raw materials, (b) are artificial (and therefore do not exist in nature or naturally occur), (c) were synthesized (man-made as opposed to naturally created), or (d) have undergone substantial processing that has materially altered the original plant's chemical composition; and, therefore, Plaintiff has no way of determining whether the Challenged Representations on the Products are true.

i. **Inability to Rely.** Plaintiff Nerisyan is, and continues to be, unable to rely on the truth of the Challenged Representations on the Products' labels.

9.    **Plaintiff's Future Harm.** Defendants continue to market and sell the Products with the Challenged Representations. Plaintiff would like to purchase the Products in the future if they lived up to and conformed with the Challenged Representations. However, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of personal or hair care products,

such as the Products. Indeed, Plaintiff does not have any personal or specialized knowledge regarding the ingredients or the methods Defendants used to make them (including sourcing and manufacturing processes). Thus, Plaintiff cannot accurately differentiate between ingredients that come from plants, as opposed to other raw materials, ingredients that are harvested from plants as opposed to artificially created or synthesized, or ingredients that may have come from plants but were subjected to substantial processing that materially altered the original plant's chemical composition. Since Plaintiff wants to purchase the Products again to obtain the benefits of the Plant-Based Representations—despite the fact that the Products were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Plant-Based Representations on their labels, packaging, and Defendants' advertisements, including Defendants' websites and social media platforms. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendants have fixed the Products such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiff is currently and in the future deprived of the ability to rely on the Plant-Based Representations in deciding to purchase the Products.

## B.    Defendants

10.    **Defendant Renpure, LLC ("Defendant Renpure")** is a corporation maintaining a principal place of business in Mound, Minnesota and was doing business in the state of California during all relevant times, including the Class Period. Defendant Renpure is one of the owners, manufacturers, marketers, and/or distributors of the Products, and is one of the companies that created, authorized, and controlled the use of the Plant-Based Representations to market the Products. Defendant Renpure and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Plant-Based Representations on the Products

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

were prepared, authorized, ratified, and/or approved by Defendant Renpure and its agents, and were disseminated throughout California and the nation by Defendant Renpure and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products.

11. **Defendant MAV Beauty Brands, Inc., ("Defendant MAV")** is a corporation headquartered and/or maintaining a principal place of business in the city of Vaughan, Ontario and was doing business in the state of California during all relevant times, including the Class Period. Defendant MAV is one of the owners, manufacturers, marketers, and/or distributors of the Products, and is one of the companies that created, authorized, and controlled the use of the Plant-Based Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Plant-Based Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products.

12. **Defendant Marc Anthony Cosmetics, Inc., ("Defendant Marc Anthony")** is a corporation headquartered and/or maintaining a principal place of business in city of Vaughan, Ontario and was doing business in the state of California during all relevant times, including the Class Period. Defendant Marc Anthony is one of the owners, manufacturers, marketers, and/or distributors of the Products, and is one of the companies that created, authorized, and controlled the use of the Plant-Based Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Plant-Based Representations on the Products were prepared, authorized, ratified,

and/or approved by Defendant and its agents, and were disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products.

## V.    FACTUAL ALLEGATIONS

### A.    Market and Regulatory Background

13.    **Consumer Demand for Plant-Based Products**. In recent years, consumers have poured billions of dollars into the "plant-based" and "natural" personal care market.[1] Consumers value plant-based products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.[2] In response to consumers' desire for natural plant-based products, many companies, including Defendants, have scrambled to manufacture, market, and sell purportedly "plant-based" products in an effort to gain market share. Unfortunately, rather than creating the natural, plant-based products consumers desire, Defendants have chosen to "greenwash" the Products and market them through deceptive labeling and advertising to convince consumers the Products are plant-based and natural when, in reality, they contain synthetic and highly processed ingredients.

14.    **FTC Guidelines.** In response to frequent and pervasive greenwashing, the United States Federal Trade Commission ("**FTC**") created the "Green Guides" to help companies avoid making misleading and deceptive claims.2F[3]  As relevant here, the FTC stated:

---

[1] *See generally Plant-Based Personal Care Products*, Eternal Spiral Books (Nov. 24, 2018), https://eternalspiralbooks.com/plant-based-personal-care-products/ (last accessed September 17, 2023).
[2] *Id.*
[3] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

-12-

Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of "biobased," and other similar claims, such as **"<u>plant-based,</u>"** in the context of their advertisements.[4]

16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (emphasis added). Here, Defendants disregarded FTC guidelines on "Plant-Based" claims, opting to manufacture the Products with ingredients that are neither water nor plant, and at times entirely artificial, synthetic, or substantially processed. Thus, Defendants did not fulfill its responsibility to "substantiat[e] consumers' reasonable understanding of . . . 'plant-based'" advertising claims as reasonable consumers, such as Plaintiff, reasonably believe that "plant-based" Products only contain water or plant ingredients that have not undergone substantial processing.

### B.    <u>Defendants' Marketing Strategy</u>

15.    **Brand Strategy/Marketing Campaign.** Defendants deliberately created and executed a marketing campaign to distinguish the Renpure brand and company company through its sale of the Products at issue in this case, which it touts as clean, sustainably made, better-for-you or healthier, and well-designed because they purportedly only use natural plant-based ingredients.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4] *See* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (emphasis added).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

16.    **Challenged Representations on Products' Labels.** Defendants falsely and misleadingly labels the Products with the Challenged Representations, "Plant-Based," "PLANT-BASED," and "plant based,"" as depicted below:







The Challenged Representations on the Products' packaging are conspicuous and designed to grab the consumer's attention.

a. **Placement.** The Challenged Representations are prominently placed on each Products' primary display panel of the front label or packaging. *See* **Exhibit 1** [Product Images].

b. **Sparsity.** The Challenged Representations are not hidden in a sea of information; rather, the front panel contains scant information about the Products, largely limited to the brand name (Renpure), identity of the product line (e.g., Shampoo or Conditioner), identity of the product variation (e.g., Biotin & Collagen), size (e.g., 24 fl. oz.), and a few claims about the Products' attributes which largely if not entirely reinforce the Challenged Representations (e.g., ZERO gluten, dyes, propylene glycol, sulfates, parabens, phthalates, formaldehydes). *See* **Exhibit 1** [Product Images].

c. **Typeface.** The Challenged Representations stand out from the scant information contained on the front panel, prominently displayed with a bold and large typeface, clear and legible font, and highly visible letters that starkly contrast with the Products' background. *See id.*

d. **Name.** The Challenged Representations are used to name the Products (e.g., "Plant-Based Shampoo," "Plant-Based Conditioner") to ensure that consumers will identify the Products as "Plant-Based." *Id.*

e. **Imagery.** Defendants use plant imagery to reinforce the Challenged Representations. Many of the Products have background imagery

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

covering their packaging that is readily or easily identified by consumers as images of plants, like flowers and leaves, or immediately adjacent to the Challenged Representation, as depicted below. *Id.*



In this way, Defendants use the Products' carefully designed labels and packaging, including the Challenged Representations' placement and typeface, alongside the sparsity of competing information and abundance of reinforcing imagery, to perpetuate the false notion that the Products are truly "plant-based." The net-effect or net-impression on consumers viewing the Products' labels or packaging is that the Products contain only natural plant and water ingredients, to the exclusion of artificial or synthetic ingredients.

17.    **Renpure Website.** Defendants emphasize the Products' purported plant-based attribute in its advertising of the Products and the Renpure brand as part of its marketing campaign and brand strategy to identify Renpure *Plant-Based* hair care products (e.g., shampoos/conditioners, leave-in treatments, scalp treatments) as "plant-based." Not only have Defendants named and labeled or packaged the Products with the Challenged Representations, but Defendants engaged in a marketing campaign that focuses on selling safe or healthier and environmentally or socially responsible products, in particular natural plant-based products. Defendants' marketing campaign and brand strategy are evidenced by its website dedicated to the sale of the Products, located at https://www.renpure.com/. For example:

a.    **Home.** On the homepage of its official website, Defendants reinforce its brand name, Renpure, with the statement: "***Naturally*** Beautiful, Inside and Out." **Exhibit 2-a** [Homepage 1 – Sustainability] (emphasis added). Additionally, Defendants showcase different messages such as: sustainable (*see* **Exhibit 2-a** [Homepage 1 – Sustainability]); naturally beautiful (*see* **Exhibit 2-b** [Homepage 2—Naturally Beautiful]) ("Renpure crafts its formulas to bring your hair and skin to

life by using **naturally** inspired ingredients") (emphasis added); no compromises (*see* **Exhibit 2-c** [Homepage 3—No Compromises] ("Everyone deserves beautiful hair and skin without any trade-offs. Renpure products are high quality, sustainable, and they actually work – all at an affordable price. Our products make it easy to do good for you, your family, and the planet, with every shower you take."); and clean beauty (*see* **Exhibit 2-d** [Homepage 4—Clean Beauty]) ("Naturally inspired, Renpure was founded on clean beauty values. Renpure hair and body care products leave hair and skin looking and feeling healthy and beautiful without the use of harsh sulfates, parabens & phthalates as well as 1600 other unnecessary ingredients.")

b. **Our Story.** On the "Our Story" webpage, Defendants describe that the Renpure brand is a brand with purpose. **Exhibit 2-e** [Our Story]. "'Plant-Based' and 'Clean' can sometimes mean a trade-off with quality, but not at Renpure. Our products are both safe and effective, delivering beautiful results for your hair and skin." *Id.* Furthermore, Defendants tout that the Products are free from harmful ingredients because they "believe that what you [consumers] put on your body is just as important as what you put in it." *Id.*

c. **Frequently Asked Questions.** Likewise, on the FAQ webpage, Defendants tethers its brands for being safe to use because of the ingredients that they use to formulate the Products. **Exhibit 2-f** [FAQs].

d. **Plant-Based Hair Care.** On the Plant-Based Hair Care webpage, Defendants further emphasizes that the Products are plant-based. **Exhibit 2-g** [Plant-Based Hair Care] ("Get in on the plant-powered revolution!").

18. **Social Media Representations.** Defendants continuously and methodically use deceptive labeling and marketing techniques to falsely portray its Products as plant-based, and its brand as natural and safe, taking advantage of social media platforms like Twitter, Instagram, Facebook, and Pinterest. For example:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-16-

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

a. **Instagram Screenshots.** Defendants official Instagram account for Renpure has marketed and advertised the Products and the brand as plant-based, clean, natural, and safe. Examples of such marketing



**Website: @Renpure**
**URL: https://www.instagram.com/renpure/**
**Date Captured: 10/17/2023**

efforts are depicted on the following pages.



**Website: @Renpure**
**URL: https://www.instagram.com/p/Cx_b9TAOMdN/?img_index=1**
**Date Captured: 10/17/2023**

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19





Website: @Renpure
URL:
https://www.instagram.com/
p/Cv00LHdt9kH/
Date Captured: 10/17/2023

20   / / /
21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

CLASS ACTION COMPLAINT

b. **Facebook Screenshots.** Defendants Facebook account for Renpure also markets and advertises the Products as clean, natural, and plant-based. In the intro, Defendants tout that "Renpure was created with the vision to deliver high quality, clean beauty and person." Examples of such advertising are depicted below.



## Intro

Founded in 2008, Renpure was created with the vision to deliver high quality, clean beauty and person

ℹ️ Page · Health/beauty

📞 (888) 295-8856

✉️ info@renpure.com

🌐 renpure.com

💲 Price Range · $$

⭐ Rating · 3.9 (434 Reviews) ℹ️

**Website: @Renpure**
**URL: https://www.facebook.com/renpure**
**Date Captured: 10/17/2023**

-19-

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## C.    Falsity of the Challenged Representations

19.    **Falsity of the Challenged Representations.** Although each of the Products at issue is marketed with the Challenged Representations, the Products are chock full of ingredients that are not from any plants or water whatsoever, and, in many instances, are artificial (do not exist in nature or naturally occur) or chemically synthesized. Defendants admit that their "Plant-Based collection" only uses about "75% plant-based ingredients" (*see* **Exhibit 2g**), and numerous Products only use 48-90% "Plant-Based Ingredients" (*see* **Exhibit 4** (identifying current webpages for certain Products wherein Defendants identify each ingredient that is not "plant-based" and admits a substantial percentage of the ingredients, ranging from 10-52%, are not "plant-based")).[5] The following provides examples of the ingredients in the Products that are not "plant-based" (the "**Challenged Ingredients**"):

a.    Renpure *Plant-Based Conditioners* (in all variations and scents) and in all sizes, contain the following ingredients that are not plants:

(1)    <u>Amodimethicone</u>: Is a silicone-based polymer typically used in hair care products. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(2)    <u>Benzyl Salicylate</u>: Is a salicylic acid benzyl ester and a chemical compound most frequently used in cosmetics as a fragrance additive. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

---

[5]    Defendants admit that the following ingredients are not "plant-based": (1) Amodimethicone; (2) Benzyl Salicylate; (3) Biotin; (4) Butylene Glycol; (5) Caprylyl Glycol; (6) Cetearamidoethyl Diethonium Isostearoyl Hydrolyzed Pea Protein; (7) Cetrimonium Chloride; (8) Citric Acid; (9) Citronellol; (10) Coumarin; (11) Cyclopentasiloxane; (12) Distearoylethyl Dimonium Chloride; (13) Ethyl Alcohol; (14) Ethylhexylglycerin; (15) Fragrance (aka Parfum); (16) Glycereth-26; (17) Hexyl Cinnamal; (18) Hydrolyzed Collagen; (19) Hydroxycitronellal; (20) Isopropyl Palmitate; (21) Leuconostoc/Radish Root Ferment Filtrate; (22) Limonene; (23) Linalool; (24) Panthenol (Pro-Vitamin B5); (25) PEG-120 Methyl Glucose Dioleate; (26) Phenethyl Alcohol; (27) Phenoxyethanol; (28) Polysorbate 20; (29) Polyquarternium-10; (30) Potassium Sorbate; (31) Silicone Quaternium-17; (32) Sodium Benzoate; (33) Sodium Chloride; (34) Sodium Cocoyl Isethionate; (35) Sodium Hydroxide; (36) Sodium Isethionate; (37) Sodium Sulfate; (38) Stearamidopropyl Dimethylamine; (39) Tetrasodium Glutamate Diacetate; (40) Tocopherol; (41) Tocopheryl Acetate; (42) Trideceth-12; and (43) Trisodium Ethylenediamine Disuccinate. *See* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(3)   <u>Biotin (Vitamin B7)</u>: Is synthetically made through biotechnological approaches. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(4)   <u>Butylene Glycol</u>: Is a synthetically made chemical compound that is derived from petroleum (by catalytic hydrogenation), sugarcane, or distilled corn. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(5)   <u>Caprylyl Glycol</u>: Manufactured synthetically and is a skin and hair conditioning agent. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(6)   <u>Cetrimonium Chloride:</u> Is a preservative and is commonly and widely used in cosmetic and personal care products. Specifically, cetrimonium chloride is a topical antiseptic and surfactant ang are generally combined with long-chain fatty alochols, such as stearyl alcohols, in formulations of hair conditioners and shampoos. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(7)   <u>Cetyl Alcohol:</u> Manufactured through the reduction of ethyl palmitate (the waxy ester of palmitic acid that is an organic compound) with metallic sodium and alcohol or under acidic conditions with the chemical compound lithium aluminum hydride as a catalyst.

(8)   <u>Citric Acid</u>: Commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria Aspergillus niger and glucose. Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells). Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(9)   <u>Courmarin</u>: Manufactured by a number of different name reactions, for example with the Perkin reaction between salicylaldehyde and acetic anhydride (other examples include Pechmann condensation and Kostanecki acylation). Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(10)  <u>Ethyl Alcohol (Ethanol)</u>: Is produced as a petrochemical through the hydration of ethylene. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(11)  <u>Ethylhexylglycerin</u>: Derived from synthetic raw materials. It is an eye irritant that may cause dermatitis when used on people with sensitive skin. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(12) <u>Fragrance (aka parfum)</u>: A synthetic compound composed of petroleum by-products such as benzene derivatives, aldehydes, toluene, and other known toxic chemicals. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(13) <u>Glycereth-26</u>: Is manufactured by mixing polyethylene glycol with glycerin. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(14) <u>Glycerin</u>: Synthetic and produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon heteroatom single bond is cleaved or undergoes lysis by hydrogen.

(15) <u>Glyceryl Stearate</u>: Made by reacting glycerin (*see supra*) with stearic acid, which is synthesized by the hydrolysis of animal fats.

(16) <u>Guar Hydroxypropyltrimonium Chloride</u>: A common synthetic cationic polymer used in cosmetics for anti-frizz and static.

(17) <u>Hexyl Cinnamal</u>: Is a fragrance ingredient synthesized by the reaction between octanal and benzaldehyde. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(18) <u>Hydrolyzed Collagen</u>: Synthetically made through hydrolysis (which breaks down the protein into smaller pieces, making it easier for the body to absorb) and is commonly used in supplements and personal care products. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(19) <u>Hydroxycitronellal</u>: Produced synthetically from naturally occurring scent chemical citronellal. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(20) <u>Isopropyl Palmitate</u>: Is the ester of isopropyl alcohol and palmitic acid. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(21) <u>Limonene</u>: Synthetically created from geranyl pyrophosphate, via cyclization of a neryl carbocation. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(22) <u>Linalool</u>: Produced industrially by hemi-synthesis from pinene or through total chemical synthesis. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(23) <u>Panthenol (Pro-Vitamin B5)</u>: Synthetically produced by combining propanolamine and beta-dimethyl butyrolactone. When panthenol is applied topically, it penetrates the lower layers of the skin, is absorbed by skin cells and converted to pantothenic acid (more commonly known as vitamin B5). Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(24) <u>Phenethyl Alcohol</u>: Synthetically formed via two most common routes: (1) the Friedel-Crafts reaction between benzene and ethylene oxide in the presence of aluminum trichloride or (2) the biotransformation from L-phenylalanine using immobilized yeast Saccharomyces cerevisiae. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(25) <u>Phenoxyethanol:</u> Synthetically made for commercial purposes by reacting phenol, a mildly acidic petroleum derived chemical, with ethylene oxide, a proven human carcinogen, in an alkaline medium. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(26) <u>Polysorbate 20</u>: A synthetic ingredient, manufactured through the ethoxylation of sorbitol which is a sweetener synthetically extracted from glucose. Polysorbate is synthesized through dehydration of sorbitol, esterification with oleic acid, and etherification with ethylene oxide. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(27) <u>Potassium Sorbate</u>: A chemical compound primarily used as a preservative. Virtually all of the production of sorbic acid, from which potassium sorbate is derived, is manufactured synthetically and is produced in a two-step process via the condensation of crotonaldehyde and ketene potassium sorbate is known to be a skin, eye, and respiratory irritant. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(28) <u>Silicone Quaternium-17</u>: Is a polyqyaternary organosilicon. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(29) <u>Sodium Benzoate ("SB")</u>: A chemical and synthetic preservative that does not occur naturally and is used to prevent bacteria contamination. SB is the chemical benzoate of soda ($C7H5NaO2$), produced by the neutralization of benzoic acid with sodium bicarbonate, sodium carbonate, or sodium hydroxide. Defendant admits that this ingredient is not plant-based. *See, supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(30) <u>Sodium Hydroxide</u> is a synthetically manufactured substance also called caustic soda or lye, and Sodium hydroxide is a co-

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

product of chlorine production. Sodium hydroxide is derived from salt water (brine). It is most commonly manufactured by the electrolysis of brine, a salt (NaCl) solution. During this process the water ($H_2O$) is reduced to hydrogen gas (H) and hydroxide ion (OH). The hydroxide ion bonds with the sodium to form sodium hydroxide (NaOH). Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(31) Stearamidopropyl Dimethylamine: Synthetically manufactured through amidation (amide-forming condensation) of fatty acids with 3, 3-dimethylaminopropylamine (DMAPA), most commonly under alkaline or acidic conditions. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(32) Tetrasodium Glumate Diacetate (GLDA): Synthetically produced from glutamic acid. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(33) Tocopherol: Classified by federal regulations as a synthetic substance, even when extracted from natural oils, which is done through molecular distillation, solvent extraction, or absorption chromatography. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(34) Tocopheryl Acetate (Vit. E): A synthetic, highly processed form of Vitamin E manufactured using acetic acid. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(35) Trideceth-12: Manufactured by the reaction of ethylene oxide and tridecyl alcohol through ethoxylation. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

(36) Trisodium Ethylenediamine Disuccinate: A synthetically produced chelating agent which is extracted from the amino acid L-aspartic acid. Defendant admits that this ingredient is not plant-based. *See*, *supra*, n.5; *see also* **Exhibit 4** [Chart re: Not Plant-Based Admissions].

b. Renpure *Plant-Based Leave-In Products* (in all variations and scents) and in all sizes, contain the following ingredients that are not plants:

(1) Caprylyl Glycol: *See supra* ¶ 20(a).

(2) Cetearamidoethyl Diethonium Isostearoyl Hydrolyzed Pea Protien: Is synthetically made through hydrolysis. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(3) Cetyl Alcohol: *See supra* ¶ 20(a).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

(4)    Citric Acid: *See supra* ¶ 20(a).

(5)    Citronellol: Formed by hydrogenation of geraniol or nerol. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(6)    Courmarin: *See supra* ¶ 20(a).

(7)    Cyclopentasiloxane: Is a synthetic substance made of silicone and oxygen and produced through hydrolysis and distillation of dichloride (a mixture of cyclic and polydimethylsiloxanes). Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(8)    Distearoylethyl Dimonium Chloride: Is a quaternary ester of stearic acid. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(9)    Ethylhexylglycerin: *See supra* ¶ 20(a).

(10)    Fragrance: *See supra* ¶ 20(a).

(11)    Glycerin: *See supra* ¶ 20(a).

(12)    Leuconostoc/Radish Root Ferment Filtrate: Is a postbiotic preservative. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(13)    Limonene: *See supra* ¶ 20(a).

(14)    Linalool: *See supra* ¶ 20(a).

(15)    Panthenol: *See supra* ¶ 20(a).

(16)    Phenoxyethanol: *See supra* ¶ 20(a).

(17)    Sodium Chloride: Formed when sodium atoms interact with chlorine atoms. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(18)    Sodium Hydroxide: *See supra* ¶ 20(a).

(19)    Tocopheryl Acetate: *See supra* ¶ 20(a).

c.    Renpure *Plant-Based Scalp Products* (in all variations and scents) and in all sizes, contain the following ingredients that are not plants:

(1)    Decyl Glucoside: A surfactant that is synthetically created by reacting glucose with certain alcohols.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

(2)  <u>Ethylhexylglycerin</u>: *See supra* ¶ 20(a).

(3)  <u>Fragrance</u>: *See supra* ¶ 20(a).

(4)  <u>Glycerin</u>: *See supra* ¶ 20(a).

(5)  <u>Glyceryl Stearate</u>: *See supra* ¶ 20(a).

(6)  <u>Guar Hydroxypropyltrimonium Chloride</u>: *See supra* ¶ 20(a).

(7)  <u>Lauryl Glucoside</u> is a dispersant or surfactant made from coconut or palm oil and glucose from corn. The fatty alcohols can be sourced from petrochemicals.

(8)  <u>Phenoxyethanol</u>: *See supra* ¶ 20(a).

(9)  <u>Polyquarternium-10</u>: Is a quaternized cellulose polymer and is prepared by a cationic etherifying agent reacted with hydrocyethyl cellulose. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(10) <u>Polysorbate 20</u>: *See supra* ¶ 20(a).

(11) <u>Stearic Acid</u>: Synthesized from carbohydrates.

(12) <u>Trisodium Ethylenediamine Disuccinate</u>: *See supra* ¶ 20(a).

d.  Renpure *Plant-Based Shampoos* (in all variations and scents) and in all sizes, contain the following ingredients that are not plants:

(1)  Benzyl Salicylate: *See supra* ¶ 20(a).

(2)  <u>Biotin (Vitamin B7)</u>: *See supra* ¶ 20(a).

(3)  <u>Butylene Glycol</u>: *See supra* ¶ 20(a).

(4)  <u>Caprylyl Glycol</u>: *See supra* ¶ 20(a).

(5)  <u>Citric Acid</u>: *See supra* ¶ 20(a).

(6)  <u>Coco Glucoside</u>: Produced by combining glucose with fatty alcohol from coconut oil feedstock in the presence of acid catalysts at elevated temperatures. The fatty alcohol used for synthesis can be obtained either from synthetic (petrochemical) or natural sources (fats and oils).

(7)  <u>Courmarin</u>: *See supra* ¶ 20(a).

(8)  <u>Decyl Glucoside</u>: *See supra* ¶ 20(c).

(9)  <u>Ethylhexylglycerine</u>: *See supra* ¶ 20(a).

(10) <u>Fragrance</u>: *See supra* ¶ 20(a).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(11)  Glycerin: *See supra* ¶ 20(a).

(12)  Guar Hydroxypropyltrimonium Chloride: *See supra* ¶ 20(a).

(13)  Hexyl Cinnamal: *See supra* ¶ 20(a).

(14)  Hydrolyzed Collagen: *See supra* ¶ 20(a).

(15)  Hydroxycitronellal: *See supra* ¶ 20(a).

(16)  Lauryl Glucoside: *See supra* ¶ 20(c).

(17)  Limonene: *See supra* ¶ 20(a).

(18)  Linalool: *See supra* ¶ 20(a).

(19)  Panthenol: *See supra* ¶ 20(a).

(20)  PEG-120 Methyl Glucose Dioleate: Is a compound made from polyethylene glycol, methyl glucose, and oleic acid and is commonly used as a surfactant, emulsifier, and thickener in cosmetics and personal care products. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(21)  Phenethyl Alcohol: *See supra* ¶ 20(a).

(22)  Phenoxyethanol: *See supra* ¶ 20(a).

(23)  Polyquaternium-10: *See supra* ¶ 20(c).

(24)  Polysorbate 20: *See supra* ¶ 20(a).

(25)  Potassium Sorbate: *See supra* ¶ 20(a).

(26)  Silicone Quaternium-17: *See supra* ¶ 20(a).

(27)  Sodium Benzoate ("SB"): *See supra* ¶ 20(a).

(28)  Sodium Chloride: *See supra* ¶ 20(b).

(29)  Sodium Cocoyl Isethionate: Is a synthetically made surfactant. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see* also Exhibit 4 [Chart re Not Plant-Based Ingredients].

(30)  Sodium Lauroyl Sarcosinate: Originally of vegetable origin but is now synthetically made. It is the salt of lauroyl sarcosine (produced by the breakdown of creatine or caffeine), a modified fatty acid.

(31)  Sodium Hydroxide: *See supra* ¶ 20(a).

(32)  Sodium Isethionate (aka sodium 2-hydroxyethyl sulfonate): Is synthetically made by the condensation reaction of sodium bisulfite and ethylene oxide. Defendant admits that this

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(33)    <u>Sodium Sulfate</u>: Is synthetically made through hydrochloric acid production, either from sodium chloride and sulfuric acid through Mannheim process or from sulfur dioxide through the Hargreaves process. Defendant admits that this ingredient is not plant-based. *See supra* fn 5; *see also* Exhibit 4 [Chart re Not Plant-Based Ingredients].

(34)    <u>Tetrasodium Glumate Diacetate (GLDA)</u>: *See supra* ¶ 20(b).

(35)    <u>Tocopherol</u>: *See supra* ¶ 20(a).

(36)    <u>Tocopheryl Acetate</u>: *See supra* ¶ 20(a).

(37)    <u>Trisodium Ethylenediamine Disuccinate</u>: *See supra* ¶ 20(a).

### D.    <u>Plaintiff and Reasonable Consumers Were Misled by the Challenged Representations into Buying the Products, to Their Detriment</u>

20.    **Products.** Defendants manufacture, market, promote, advertise, label, package, and sell the Products—specifically, Renpure brand hair care products that contain the Challenged Representations on their packaging and labels.

21.    **The Challenged Representations.** On the Products' labeling and packaging, Defendants prominently, conspicuously, and repeatedly displays the Challenged Representations—specifically, "Plant-Based," "plant based," and/or "PLANT BASED" (*see* **Exhibit 1** [Product Images]).

22.    **Reasonable Consumer's Perception.** The Challenged Representations, in isolation or combined with Defendants' marketing campaign and brand strategy, lead reasonable consumers, like Plaintiff, into believing that the Products conform to the Challenged Representations. More specifically, reasonable consumers interpret the Challenged Representations to mean that the Products are "plant-based"— meaning, they only contain natural plant and water ingredients, to the exclusion of artificial and synthetic ingredients. The reasonable consumer's perception of the Challenged Representations is consistent with their ordinary and common usage, as defined by dictionaries, and the regulatory definition of artificial:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a. **Plant-Based Definitions:**

(1) <u>Merriam-Webster Dictionary Definition: Plant-Based.</u> "[M]ade or derived from plants"; "consisting . . . entirely of food (such as vegetables, fruits, nuts, oils, and beans) derived from plants."5F[6]

(2) <u>Cambridge Dictionary Definition: Plant-Based.</u> "[C]onsisting or made completely of plants."[7]

(3) <u>Dictionary.com Definition: Plant-Based.</u> "[C]onsisting entirely … of whole … plant parts, such as vegetables, fruits, grains, nuts, legumes, and seeds."[8]

(4) <u>Oxford Learners Dictionary Definition: Plant Based.</u> "[C]onsists … entirely of foods from plants, such as fruits, vegetables and grains."[9]

b. **Natural Definitions:**

(1) <u>Merriam-Webster Dictionary Definition: Natural.</u> "[E]xisting in or produced by nature: not artificial," and "not having any extra substances or chemicals added: not containing anything artificial."[10]

(2) <u>Cambridge Dictionary Definition: Natural.</u> "[A]s found in nature and not involving anything made or done by people."[11]

(3) <u>Dictionary.com Definition: Natural.</u> "[E]xisting in or formed by nature (opposed to artificial), based on the state or behavior of things in nature; constituted by nature."[12]

(4) <u>Oxford Learner's Dictionaries Definition: Natural.</u> "[E]xisting in nature; not made or caused by humans."[13]

c. **Artificial Definitions:**

(1) <u>Merriam-Webster Dictionary Definition: Artificial.</u> "[H]umanly contrived" and "MAN-MADE."[14]

---

[6] Merriam-Webster.com, *plant-based*, available at https://www.merriam-webster.com/dictionary/plant-based (last accessed 10/12/2023).

[7] Cambridge Dictionary, *plant-based*, available at https://dictionary.cambridge.org/us/dictionary/english/plant-based (last accessed 10/25/2023).

[8] Dictionary.com, *plant-based*, available at https://www.dictionary.com/browse/plant-based (last accessed 10/25/2023).

[9] Oxford Learner's Dictionaries, *plant-based*, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/plant-based?q=plant-based (last accessed 10/25/2023).

[10] Merriam-Webster.com, *natural*, available at https://www.merriam-webster.com/dictionary/natural (last accessed 10/12/2023).

[11] Cambridge Dictionary, *natural*, available at https://dictionary.cambridge.org/us/dictionary/english/natural (last accessed 10/25/2023).

[12] Dictionary.com, *natural*, available at https://www.dictionary.com/browse/natural (last accessed 10/25/2023).

[13] Oxford Learner's Dictionaries, *natural*, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/natural_1?q=natural (last accessed 10/25/2023).

[14] Merriam-Webster.com, *artificial*, available at https://www.merriam-webster.com/dictionary/artificial (last accessed 10/12/2023).

-29-

(2) <u>Cambridge Dictionary Definition: Artificial.</u> "[M]ade by people."[15]

(3) <u>Dictionary.com Definition: Artificial.</u> "made by human skill; produced by humans (opposed to natural)"; "produced by man; not occurring naturally"; "made in imitation of a natural product, esp as a substitute; not genuine"[16]

(4) <u>Oxford Learner's Dictionaries Definition: Artificial.</u> "created by people; not happening naturally"[17]

(5) 21 C.F.R. 101.22(a)(1) Definition: "Artificial Flavor." A flavoring agent that "is not derived from . . . . natural sources," like animals, spices, fruits, vegetables, roots, or "similar plant material."

d. **Synthetic Definitions:**

(1) <u>Merriam-Webster Dictionary Definition: Synthetic.</u> "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"[18]

(2) <u>Cambridge Dictionary Definition: Synthetic.</u> "made artificially and not produced from natural substances"; "an artificial substance or material"[19]

(3) <u>Dictionary.com Definition: Synthetic.</u> "noting or pertaining to compounds formed through a chemical process by human agency, as opposed to those of natural origin"; "something made by a synthetic, or chemical, process"; "(of a substance or material) made artificially by chemical reaction"; "Produced artificially, especially in a laboratory or other man-made environment"[20]

(4) <u>Oxford Learner's Dictionaries Definition: Synthetic.</u> "artificial; made by combining chemical substances rather than being produced naturally by plants or animals"[21]

e. **Man-Made Definitions:**

---

[15] Cambridge Dictionary, *artificial*, available at https://dictionary.cambridge.org/us/dictionary/english/artificial (last accessed 10/25/2023).

[16] Dictionary.com, *artificial*, available at https://www.dictionary.com/browse/artificial (last accessed 10/26/2023).

[17] Oxford Learner's Dictionaries, *artificial*, available at https://www.oxfordlearnersdictionaries.com/definition/english/artificial#:~:text=artificial%20made%20or%20produced%20to,artificial%20light (last accessed 10/26/2023).

[18] 7 U.S.C. § 6502 (21).

[19] Cambridge Dictionary, *synthetic*, available at https://dictionary.cambridge.org/dictionary/english/synthetic (last accessed 10/26/2023).

[20] Dictionary.com, *artificial*, available at https://www.dictionary.com/browse/synthetic (last accessed 10/26/2023).

[21] Oxford Learner's Dictionaries Definition, *synthetic*, available at https://www.oxfordlearnersdictionaries.com/definition/english/synthetic_1?q=synthetic (last accessed 10/26/2023).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

(1) <u>Merriam-Webster Dictionary Definition: Man-Made.</u> "[M]anufactured, created, or constructed by human beings *specifically:* SYNTHETIC."[22]

(2) <u>Cambridge Dictionary Definition: Man-Made.</u> "artificial rather than natural"; "produced or developed by humans rather than coming directly from nature"; "made by people, rather than existing naturally"[23]

(3) <u>Dictionary.com Definition: Man-Made.</u> "produced, formed, or made by humans"; "produced artificially; not resulting from natural processes"; "made or produced by man; artificial"[24]

(4) <u>Oxford Learner's Dictionaries Definition: Man-Made.</u> "made by people; not natural"[25]

23.    **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products—meaning that the Products' "Plant-Based" attribute is important to consumers and motivates them to buy the Products.

24.    **Reliance.** The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

25.    **Falsity.** The Challenged Representations are false and deceptive because the Products are not plant-based—meaning that the Products are not solely comprised of plant and water ingredients. Instead, they contain ingredients that do not come from plants or water, and are often entirely artificial (i.e., do not exist in nature or naturally occur) or synthetic (i.e., made in a laboratory through chemical processes).

26.    **Consumers Lack Knowledge of Falsity.** Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendants and therefore have no personal knowledge of the actual ingredients used to formulate the Products,

---

[22]    Merriam-Webster.com, *man-made*, available at https://www.merriam-webster.com/dictionary/man-made (last accessed 10/25/2023).

[23]    Cambridge Dictionary, *man-made*, available at https://dictionary.cambridge.org/dictionary/english/man-made (last accessed 10/26/2023).

[24]    Dictionary.com, *man-made*, available at https://www.dictionary.com/browse/man-made (last accessed 10/26/2023).

[25]    Oxford Learner's Dictionary, *man-made*, available at https://www.oxfordlearnersdictionaries.com/definition/english/man-made?q=man-made (last accessed 10/26/2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

including the methods used to source and manufacture those ingredients. Additionally, most consumers do not have the specialized knowledge of a chemist or product-developer, or an encyclopedic knowledge base of every chemical or ingredient name and the standard methods used to source and manufacture them. Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures whether non-water ingredients come from plants or, instead, were artificially created, synthesized, or substantially processed so as to materially alter any original plant composition. Furthermore, reasonable consumers, like Plaintiff, does not ordinarily review information on the back or side panels of a consumer products' packaging, like the Products' packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at the side or back labels of consumer goods, such as ingredient lists, before they buy it.3F[26]

---

[26] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1B B7D7A7C9A487F22F0B445BD44499550086E04870765EBE116ED32DBFE3795 E60B69C75831563CD1BC6655A&originRegion=us-east-1&originCreation=20220720162546 (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it,*

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

27.    **Defendants' Knowledge.** Defendants knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendants intentionally and deliberately used the Challenged Representations, alongside its massive marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

a.    **Knowledge of Falsity.** Defendants named and marketed the Products with the Challenged Representations, but Defendants opted to formulate and manufacture them in a manner that does not conform to those representations. Specifically, Defendants named and advertised the Products as "Plant-Based." Instead of using only ingredients that are plants or water, Defendants chose to manufacture the Products with numerous non-plant and non-water ingredients that are artificial, synthetic, or subjected to substantial processing that materially alters any original plant composition.

b.    **Knowledge of Reasonable Consumers' Perception.** Defendants knew, or should have known, that the Challenged Representations would lead reasonable consumers into believing that the Products were entirely plant-based—meaning that the ingredients are exclusively plants or water; not artificial, synthetic, or substantially processed so as to materially alter any original plant composition. Not only has Defendants labeled and packaged each of the Products with the Challenged Representations and utilized a long-standing brand strategy to identify the Products as plant-based, natural, safer and more environmentally or socially responsible than non-plant-based or non-natural ingredients (described *supra*), but Defendants also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendants was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products were entirely plant-based and devoid of any artificial, synthetic, and substantially processed ingredients.

_____

*when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed Jul. 20, 2022) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Thus, Defendants either knew the Challenged Representations are misleading before it marketed the Products to the Class, including Plaintiff, or Defendants would have known that it is deceptive had it complied with its statutory obligations.

c.  **Knowledge of Materiality.** Defendants knew or should have known that the Challenged Representations are material to consumers. ***First***, manufacturers and marketers, like Defendants, generally reserve the front primary display panel of labels of packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels and packaging demonstrates Defendants' awareness of its importance to consumers and Defendants' understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the constant, unwavering use of the Challenged Representations on the Products, advertisements, and throughout Defendants' marketing campaign, evidence Defendants' awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendants' intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

d.  **Defendants' Continued Deception, Despite Their Knowledge.** Defendants, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, packaging, and advertisements—i.e., Defendants readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendants' knowledge of the Challenged Representations falsity, and Defendants' knowledge that consumers reasonably rely on the Plant-Based Representations in deciding to buy the Products, Defendants deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or overpaying for the Products. Indeed, Defendants continued to use the Challenged Representations to market the Products despite its receipt of Plaintiffs' notice approximately seven months ago, advising Defendants of the deceptive nature of the Challenged Representations. Thus, Defendants knew, or should have known, at all relevant times, that the Challenged Representations misleads reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendants falsely advertised and warranted.

28.  **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products, or would not have overpaid a price premium for the Products, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attribute claimed, promised, warranted, advertised, and/or

-34-

represented. Here, the challenged attribute, according to well accepted and sound economic and marketing research principles, differentiates the Products to motivate consumers to purchase the Products. As such, it has a market-value that is equivalent to either the Products' entire purchase price (in the event that consumers would not buy the Products at all, but for the challenged attribute) or a fraction of the Products' purchase price, which shall be proven at the time of trial. Accordingly, based on Defendants' material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**E.**    **The Products are Substantially Similar**

29.    As described herein, Plaintiff purchased the Purchased Products. The additional Products (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product.

a.    **Defendants.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendants.

b.    **Brand.**    All Products are sold under the same brand name: Renpure.

c.    **Purpose.** All Products are hair care products.

d.    **Key Ingredients.** All Products are made from largely the same ingredients and contain an overlapping combination of non-plant, non-water, artificial, and/or synthetic ingredients. The Purchased Products contain challenged ingredients that are found in each of the Unpurchased Products. *See*, *supra*, § C (Falsity of Challenged Representations).

e.    **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

f.    **Challenged Misrepresentations.** All Products contain the same Challenged Representations conspicuously and prominently placed on the primary display panel of the front label and/or packaging of each Product. **Exhibit 1** [Product Images]. Defendants use imagery and repetition to reinforce the Challenged Representations. *Id*.

g.    **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products— consumers over-pay a price premium for Products that conform to the Challenged Representations, but instead receive Products that do not conform.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## F.    No Adequate Remedy at Law

30.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendants' overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendants continue to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendants future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendants, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

-37-

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## VI.    CLASS ACTION ALLEGATIONS

31.    **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations on the Products' front labels and/or packaging, for purposes other than resale ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products, containing the Challenged Representations on the Products' front labels and/or packaging, for purposes other than resale ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, "**Class**").

32.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

33.    **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

34.    **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

35.  **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.  Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.  Whether Defendants' conduct of advertising and selling the Products as plant-based when they contain synthetic ingredients constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c.  Whether Defendants used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d.  Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e.  Whether Defendants advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

f.  Whether Defendants' labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.  Whether Defendants knew or by the exercise of reasonable care should have known their labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.  Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.  Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.  Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.  Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.  How much more money Plaintiff and the Class paid for the Products than they actually received;

m.  Whether Defendants' conduct constitutes breach of warranty;

n.  Whether Plaintiff and the Class are entitled to injunctive relief; and

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

o.    Whether Defendants were unjustly enriched by their unlawful conduct.

36.    **Typicality**: Plaintiff's claims are typical of the claims of the Class Members they seek to represent because Plaintiff, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

37.    **Adequacy**: Plaintiff is an adequate representative of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

38.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d.    When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendants.

39.    **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

40.    **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

41.    **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

# VII.    **CAUSES OF ACTION**

## **COUNT ONE**

### **Violation of California Unfair Competition Law**

### **(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

### **(*On Behalf of Plaintiff(s) and the California Subclass*)**

42.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

43.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

44.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

"unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

45.    **False Advertising Claims.** Defendants, in their advertising and labeling of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Plant-Based Representations—despite the fact the Products contain numerous ingredients that do not come from plants or water whatsoever, and, instead, are artificial (do not exist in nature) and/or synthetic (chemically synthesized). Such claims and omissions appear on the labeling and packaging of the Products, which are sold at retail stores, point-of-purchase displays, and online.

46.    **Defendants' Deliberately False and Fraudulent Marketing Scheme.** Defendants do not have any reasonable basis for the claims about the Products made in Defendants' advertising and on Defendants' packaging or labeling because the Products contain artificial and synthetic ingredients. Defendants knew and know that the Products contain ingredients that do not come from plants or water whatsoever, though Defendants intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products are only composed of natural plants and water ingredients, which, by definition, are not artificial or synthetic.

47.    **False Advertising Claims Cause Purchase of Products.** Defendants' labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products only contain only natural plant or water ingredients.

48.    **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendants' False Advertising Claims—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from Defendants.

49.    **Conduct Violates the UCL.** Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

50. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendants failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

51. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter their conduct or Defendants are otherwise ordered to do so.

52. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products.

53. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

54.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of the Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

### *"Unfair" Prong*

55.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

56.  **Injury.** Defendants' action of mislabeling the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendants' deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendants' deceptive labeling and advertising outweigh any benefits.

57.  **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

58.  **No Utility.** Here, Defendants' conduct of labeling the Products with the Plant-Based Representations when the Products contain numerous ingredients that do not come from plants or what whatsoever has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

59.  **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

60.  **Unfair Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of thier unfair conduct. Defendants' misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

61.  **Reasonably Available Alternatives**. There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Plant-Based Representations.

62.  **Defendants' Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

63.  **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practices of labeling the Products with the Plant-Based Representations.

64.  **Causation/Damages**. Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that contain numerous ingredients that do not come from plants or water whatsoever. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

65.  **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

66.  **Fraudulent & Material Challenged Representations.** Defendants used the Plant-Based Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Plant-Based Representations are

false, and Defendants knew or should have known of their falsity. The Plant-Based Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

67. **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendants constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

68. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Plant-Based Representations to their detriment in that they purchased the Products.

69. **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Plant-Based Representations.

70. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

71. **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of labeling the Products with the Plant-Based Representations.

72. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that contain numerous ingredients that do not come from plants or water whatsoever. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

73.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

74.    **Violations of CLRA and FAL.** Defendants' labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

75.    **Additional Violations.** Defendants' conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendants' misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

76.    **Unlawful Conduct.** Defendants' packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of its unlawful conduct.

77.    **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Plant-Based Representations and/or omitting that the Products contain numerous ingredients that do not come from plants or water whatsoever.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

78.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

79.    **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

80.    **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendants purposely deceived consumers into believing that the Products are only composed of natural plants and water ingredients. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(*On Behalf of Plaintiff(s) and the California Subclass*)**

81.    **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

82.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

83.    **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

84.   **False & Material Challenged Representations Disseminated to Public.** Defendants violated section 17500 when they advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Plant-Based Representations disseminated to the public through the Products' labeling, packaging, and advertising. These representations were false because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

85.   **Knowledge.** In making and disseminating the representations alleged herein, Defendants knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

86.   **Intent to sell.** Defendants' Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

87.   **Injunction.** Given that Defendants' conduct violated the FAL, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendants' violations of the FAL and to dispel the public misperception generated by Defendants' false advertising. Plaintiff has no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to the FAL, and otherwise require Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products with the Plant-Based Representations.

88.   **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic

losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

89. **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of the Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of Plaintiff(s) and the California Subclass*)

90. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

91. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

92. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

93. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

94. **Defendants.** Each defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

95. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

96. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

97. **Violations of the CLRA.** Defendants violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

> a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

98. **Knowledge.** Defendants' uniform and material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.

99. **Malicious.** Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

100. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

101. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendants' violations of the CLRA because they relied on the Plant-Based Representations in deciding to purchase the Products. The Plant-Based Representations were a substantial factor. The Plant-Based Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

102. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or about March 23, 2023, Plaintiff's counsel, acting on behalf of Plaintiff and all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Renpure, LLC's registered agent for service of

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Process (The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801); Defendant MAV Beauty Brands, Inc., at its headquarters and principle place of business (100 New Park Place, Suite 810, Vaughn, Ontario, L4K 0H9); and Defendant Marc Anthony Cosmetics, Inc., at its headquarters and principle place of business (100 New Park Place, Suite 810, Vaughn, Ontario, L4K 0H9) delivered March 28, 2023, April 3, 2023, and April 5, 2023, respectively.

103. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

104. **Injunction.** Given that Defendants' conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendants' violations of the CLRA and to dispel the public misperception generated by Defendants' false advertising. Plaintiff has no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products with the Plant-Based Representations.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

105. **Punitive Damages**. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants. Accordingly, Plaintiff seeks an award of punitive damages against Defendants.

## COUNT FOUR

### Breach of Warranty

#### (*On Behalf of Plaintiff(s) and the Nationwide Class and California Subclass*)

106. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

107. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

108. **Express Warranty.** By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' packaging and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendants. Defendants purport, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Plant-Based Representations.

109. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendants, merchants of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendants—to wit, that the Products, among other things, conform to the Plant-Based Representations.

110. **Breach of Warranty.** Contrary to Defendants' warranties, the Products do not conform to the Plant-Based Representations and, therefore, Defendants breached their warranties about the Products and their qualities.

111. **Causation/Remedies.** As a direct and proximate result of Defendants' breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

112. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of the Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including the Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of Plaintiff(s) and the Nationwide Class and California Subclass*)

113. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

114. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

115. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, the Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

116. **Defendants' Knowledge of Conferred Benefit.** Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

117. **Defendants' Unjust Receipt Through Deception.** Defendants' knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representations and omissions.

118. **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

119. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause the Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of the

Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including the Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## VIII. <u>PRAYER FOR RELIEF</u>

120. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representatives, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c. **Injunction:** For an order requiring Defendants to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

f.    **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g.    **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h.    **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: October 26, 2023                    Respectfully submitted,

                                           **CLARKSON LAW FIRM, P.C.**

                                            */s/ Katherine A. Bruce*
                                           Ryan J. Clarkson, Esq.
                                           Katherine A. Bruce, Esq.
                                           Kelsey J. Elling, Esq.

                                           *Attorneys for Plaintiff and the Proposed Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: October 26, 2023

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

*/s/ Katherine A. Bruce*
Ryan J. Clarkson, Esq.
Katherine A. Bruce, Esq.
Kelsey J. Elling, Esq.

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT